**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Lewis Clyde MAY, Defendant-Appellant.**

**No. 73-1069**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

May 14, 1973.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Frank W. Riggs, John W. Davis, III, Montgomery, Ala., for defendant-appellant.

Ira DeMent, U. S. Atty., D. Broward Segrest, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

PER CURIAM:

The only issue raised by appellant in this direct criminal appeal from his conviction of operating an illegal whiskey still in violation of 26 U.S.C.A. §§ 5601 (a)(1), 5601(a)(7), 5604(a)(1), is that the trial Judge's cross-examination of one of the defense witnesses constituted a departure from his role of impartiality and deprived the defendant of a fair trial. Having made a careful study of the transcript of testimony and the Judge's charge to the jury, we find no error.

Defendant's co-conspirator Frank Howard was the government's key witness. In an attempt to impeach his testimony, the defense called defendant's former counsel Ted Hoffmann to the stand. Mr. Hoffmann testified that Howard had previously given him a written, sworn statement exonerating defendant from any involvement in the illegal whiskey operation. At the conclusion of the direct examination, and upon the government's failure to cross-examine, the Court asked six questions to clarify the witness's relationship to the defendant and the circumstances surrounding the sworn statement.[1]

We cannot say that this minor interrogation deprived the defendant of a fair trial in any manner.[2]

Affirmed.

---

1. The entire colloquy between the Court and Witness Hoffmann was as follows:

THE COURT: Cross.

MR. SEGREST: I have no questions of Mr. Hoffmann.

THE COURT: Wait a minute. Who lined this appointment up for you? He didn't just come to you; who—who lined it up?

WITNESS: I told Mr. Clyde May that we needed to get a statement, I thought, from—

THE COURT: Are you one of the lawyers for May?

WITNESS: —Frank Howard. I was at that time; yes, sir; I am not at this time.

THE COURT: All right; and you were a lawyer for him then?

WITNESS: At the time I took the statement, I was his attorney; yes, sir.

THE COURT: And you told Clyde May what?

WITNESS: I told Clyde May that I needed to get a statement from Frank Howard, and Clyde May said well, he could get him, and they could meet us at the courthouse.

THE COURT: Was Clyde May with him when—

WITNESS: Clyde May was with him at the time he was—he gave the statement; yes, sir.

THE COURT: And the time you talked to him, was Clyde May there?

WITNESS: At all times at the time that I talked with—

THE COURT: I don't have any more questions.

[Appendix at 91–92].

2. Our conclusion in this regard is also supported by the careful instructions which the trial court gave to the jury concerning his own participation in asking questions, the ability to impeach a witness by prior inconsistent statements, and the testimony of an accomplice [appendix at 123–124]. The jury had not only Mr. Hoffmann's testimony, but also a copy of the prior sworn statement of Howard when it considered the case. Obviously, the jury credited Howard's testimony and discredited prior statement. And there it ends.